IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMY MOONEYHAN, | ) |
|    Plaintiff, | ) ) ) |
| v. | ) ) )   Case No. CIV-21-421-SM |
| KILOLO KIJAKAZI,<br>Acting Commissioner of Social<br>Security Administration, | ) ) ) ) |
|    Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Amy Mooneyhan (Plaintiff) seeks judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented to the undersigned for proceedings consistent with 28 U.S.C. § 636(c). Docs. 16, 17.

Plaintiff asks this Court to reverse the Commissioner's decision and remand the case for further proceedings, arguing the Administrative Law Judge (ALJ) erred by failing to include some of Dr. Steven Goldstein's limitations in Plaintiff's residual functional capacity[1] (RFC) assessment. Doc. 18, at 3-7. After a careful review of the record (AR), the parties' briefs, and the

---

[1] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

relevant authority, the Court affirms the Commissioner's decision. *See* 42 U.S.C. § 405(g).[2]

## I.   Administrative determination.

### A.   Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B.   Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the

---

[2]   Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the AR will refer to its original pagination.

Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

### C. Relevant findings.

#### 1. The ALJ's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 23-36; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found Plaintiff:

(1) had not engaged in substantial gainful activity since July 15, 2016, the alleged onset date;

(2) had the following severe medically determinable impairments: diabetes mellitus, peripheral neuropathy, obesity, and major depressive disorder;

(3) had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4) had the residual functional capacity to perform sedentary work with additional limitations, including that while seated she can push or pull up to twenty pounds occasionally and ten pounds frequently; she could never climb ladders, ropes, or scaffolds but can occasionally climb ramps and stairs; she can occasionally balance, stoop, kneel, crouch, and crawl; she should avoid exposure to fumes, odors, dust, gases, poor ventilation, unprotected heights, or dangerous machinery; she can understand, remember, and carry out simple and detailed instructions; and she cannot perform assembly-line or forced-pace work;

    (5)    was unable to perform any past relevant work;

    (6)    could perform jobs that exist in significant numbers in the national economy, such as polisher and ticket counter; and so,

    (7)    had not been under a disability from July 15, 2016 through June 2, 2020.

AR 23-36.

### 2. Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *see id.* at 7-9, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). A decision is not based on substantial evidence "if it is overwhelmed by other

evidence in the record." *Wall*, 561 F.3d at 1052. The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013).

### B. Any error in the RFC was harmless.

Plaintiff asserts the ALJ erred when she failed to include some of Dr. Steven Goldstein's physical limitations in the RFC. Doc. 18, at 3-7. The Court concludes that even assuming error, any error was harmless.

Dr. Goldstein testified at the hearing that Plaintiff's RFC was "a combination of impairment issues with a sedentary level of activity." AR 76. He stated she "can't climb up ladders, ropes, or scaffolds" but "could occasionally climb ramps or at least stairs." *Id.* at 76-77. Given that she was in a walking boot at the time, balancing would be difficult, and Dr. Goldstein did not think she could crawl. *Id.* at 77. She could squat occasionally, though.[3] *Id.* Dr. Goldstein anticipated that with healing, she could occasionally balance and crawl, but he could not "put for certain" that she would attain this level of movement. *Id.* Dr. Goldstein also testified Plaintiff should "avoid concentrated pulmonary irritants" and should not have a job with access to alcohol or unprotected heights. *Id.* at 77-78. The ALJ concluded Dr. Goldstein had opined

---

[3] The Commissioner points out that squatting has no regulatory definition but appears to implicate crouching. Doc. 21, at 5-6.

Plaintiff could occasionally squat or bend, balance, or crawl, and she found "[t]his opinion [to be] highly persuasive." *Id.* at 28. Plaintiff argues the ALJ should have gone further and adopted Dr. Goldstein's opinion that while in the walking boot she could not balance or crawl and could only occasionally bend or squat.[4] Doc. 18, at 5-7.

The ALJ noted that Plaintiff's podiatrist treated Plaintiff's left Charcot foot with "conservative measures" such as a walking boot. AR 24. Her doctor recommended Plaintiff stay in the boot from August 2019 through March 2020. *Id.* Dr. Goldstein's review of her medical records encompassed the time she remained in the walking boot. *See id.* at 75-80.

The Commissioner argues that neither of the two jobs the ALJ found at step five requires balancing, stooping, kneeling, crouching, or crawling, thus precluding Plaintiff's argument. Doc. 21, at 4-5. The Court agrees. Each position lists these skills as "[n]ot present." *See* DICOT 713.684-038, 1991 WL 679267 (Polisher, Eyeglass Frames), DICOT 219.587.010, 1991 WL 671989 (Parimutuel-Ticket Checker).

The Commissioner also points out that, "[f]or all Plaintiff's walking-boot related limitations, including balancing, the ALJ made a supported finding

---

[4]   The Commissioner argues that "[f]or SSA purposes, stooping is the same as bending," and Plaintiff does not challenge this assertion. Doc. 21, at 10.

that Plaintiff's Charcot foot impairment was not severe" and did not meet the twelve-month durational requirement needed to establish a severe impairment. Doc. 21, at 10 (quoting AR 24).

Assuming Dr. Goldstein's statement that he could not "put for certain" whether Plaintiff could occasionally crawl or balance might have indicated Plaintiff would be unable to occasionally crawl or balance, any error is harmless. An error in failing to include a more restrictive limitation as to crawling or balancing would only be prejudicial if the recommended step-five occupations would be precluded by Plaintiff's inability to do such things. But as noted, the identified jobs require neither activity; nor do they require stooping or crouching. *See Jones v. Berryhill*, 720 F. App'x 457, 459 (10th Cir. 2017) (concluding that "any error in the ALJ's step-four finding was harmless given the ALJ's alternative finding at step five" that the plaintiff could work in a job which did not require the particular abilities challenged by the plaintiff); *Lara v. Colvin*, No. CIV-12-1249-L, 2014 WL 37746, at *1, *4 (W.D. Okla. Jan. 6, 2014) (finding that "any error was harmless" where the ALJ failed to include a limitation to relating with supervisors and peers on a superficial basis in RFC where one of the occupations identified by the vocational expert did not require interaction on more than a superficial basis); *see generally Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (indicating that harmless-

error analysis may be appropriate where ALJ did not properly consider evidence but "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way").

### III. Conclusion.

Based on the above, the Court affirms the Commissioner's decision.

**ENTERED** this 15th day of March, 2022.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE